[Civ. No. 8108. Second Appellate District, Division Two.—February 28, 1934.]

SECURITY–FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Respondent, v. JOHN E. SCHUH, Appellant.

Swaffield & Swaffield, Chris Wilson, Kenneth Sperry and Joseph E. Madden for Appellant.

Denio, Hart, Taubman & Simpson for Respondent.

CRAIG, J.—In an action for the principal sum of a promissory note, together with interest and attorneys' fees, findings of fact, conclusions of law and judgment were made and entered in favor of the plaintiff. The defendant having admitted execution of the note and interposed an affirmative defense thereto, motion for a new trial was made upon the ground that findings adverse to said defense were not supported by the evidence, which motion was denied. ▉ He appealed from the judgment and from the order deny-

ing a new trial. There being no right of appeal from such an order it must to that extent be dismissed. (*Kircher* v. *Hunter*, 101 Cal. App. 548 [281 Pac. 1047].)

There is no conflict as to the following transaction: Prior to August 7, 1930, the Urmi Oil Company was indebted to the respondent bank in the sum of $5,000, which note had been executed by defendant John E. Schuh as president and Edgar D. Brown as secretary, respectively, of said company, and bore the indorsement: "For value received, I hereby . . . guarantee payment of the same, and of all expenses of collection thereof, . . . and also all expenses . . . in enforcing this guaranty . . . ", signed by defendant Schuh and B. N. Belyea. After its maturity and upon the date mentioned a promissory note for the same amount and containing a pledge of certain specified corporate stocks, by which it was agreed that "the undersigned (jointly and severally) promise[s] to pay", and that upon nonperformance of said promise the plaintiff and respondent was "given power and authority to collect, or to sell, assign and deliver the whole or any part of the pledged property, . . . at either public or private sale, and at the best price offered", and to satisfy said obligation, was executed by the appellant herein. Said latter note was also indorsed, "For value received, I hereby . . . do guarantee payment of the same . . . and of all expenses of collection thereof, . . . and also all expenses, including attorneys' fees, incurred in enforcing this guaranty", by the maker. Contemporaneously with the execution of the first note there was executed by J. N. McFate, I. B. Rankin, Edgar D. Brown and O. M. Paddleford a "guarantee" to respondent bank of any and all indebtedness "for the present forbearance of said bank to sue upon any of the past due debt of the debtor" company. A vice-president of the bank testified, and there was introduced his statement in writing under date of the original loan: "I have approved today a $5000 loan for 90 days to the above company, with the endorsements of John E. Schuh and B. W. Belyea. The company itself is not entitled to secure credit, but the endorsements made it good." The second note was given in lieu of the first note and guarantee, was delivered to the bank with said collateral securities and became the subject

matter of the present suit, both of the latter being in turn delivered to the appellant.

By said affirmative defense it was alleged that there was a delivery of appellant's note "for the consideration of the assignment of said note executed by the Urmi Oil Company and said guarantee to the defendant; that the sole and only consideration for the execution of said note by the defendant was the assignment of said note of the Urmi Oil Company and the said guarantee", but that the plaintiff failed and refused to deliver either thereof until demanded; that it canceled the name of B. W. Belyea from the indorsement upon said note, and that of I. B. Rankin from said guarantee, and delivered them to the defendant as altered, without his knowledge or consent; that he had been informed and believed that the same bore the signatures of all of said parties and would not have executed his note of August 7, 1930, had he known that the plaintiff had released them; that he signed his said note under a mistake of fact.

In so far as the determination of this appeal is concerned the sole issue is, Was Belyea's name canceled from the note or Rankin's from the guarantee without the knowledge and consent of the defendant? There is substantial evidence to support the trial court's finding against appellant upon this issue.

Mr. Gibbs, vice-president of respondent bank, testified that prior to the date of the Urmi note an arrangement was made for the loan of $5,000, and that Mr. Schuh and Mr. Belyea were to guarantee the note; that when the note was brought in "Mr. Schuh brought them, or sent them in. I think Schuh brought them in." Later he said: "Schuh brought the note in and said that Belyea's name would not be available, and that he would support the loan himself," and that the name of Belyea had two red lines drawn through it "prior to the time that the note was brought to the bank"; that at that time it was discussed what security Schuh would furnish; that in September he brought in some securities, not as much as he had agreed, but that at that time they took such securities, a special letter of guarantee and his check for $2,000. On cross-examination, the witness was not positive Schuh brought the note in, but stated that "it was Mr. Schuh, I think, that brought them in". Schuh himself testified that he was present when the

Urmi note was delivered to the bank, although he thinks it was Mr. Brown or a Mr. Warmbold who took it in. A memorandum made by Gibbs, dated August 28, 1929, stated that he had that day approved a loan to the Urmi Company for $5,000 for ninety days, with the indorsements of Schuh and Belyea, and that in addition they were to have the side guarantee of Rankin, Paddleford, Brown and Mc-Fate. Again, on cross-examination he testified that Belyea's name was stricken off before delivery to the bank. A memorandum by Gibbs dated August 20, 1929, referring to the Urmi loan, stated: "The note was brought in today with the request that Mr. Belyea be excluded from the endorsement, and that in place of Mr. Belyea's name that we secure from John E. Schuh the pledge of certain collateral, which has a market value of around $7,000, with the definite pledge from him that we are to use such collateral to support the $5,000 note of the Urmi Oil Company," and later memos showed the stock brought in by Schuh. On redirect examination Gibbs again testified that when the note was delivered to him the name of Belyea had the red lines through it and that it was at that time he had the conversation relative to Schuh depositing security "in lieu of the endorsement of Belyea". On cross-examination, again, he said he saw Belyea's signature on the note, but "didn't consider that of any use, because it was canceled". Schuh's letter of guarantee, dated September 6, 1929, refers to his check of $2,000, "to be used by you as additional collateral to support my endorsement" on the Urmi note, and states: "It is distinctly understood that you are not to necessarily look to the Urmi Oil Company to pay this note, but may look to me exclusively."

It would seem to be a fair conclusion that Belyea never guaranteed the Urmi note and that Schuh knew all about it, supporting his sole signature with a check, collateral security and a side guaranty in lieu of the guarantee of Belyea which was not furnished. In view of this and other evidence which might be quoted, certainly such a conclusion reached by a trial court cannot be disturbed on appeal.

So far as the guarantee is concerned, Mr. Dawson, who represented the bank at the time the note sued on was executed, testified that the Urmi note was delivered to Schuh the day the note sued on was executed; that nothing

was said about the general guarantee; that he did not tell Schuh anything about recovery from the general guarantors, and that Schuh talked about recovering from the Urmi Oil Company. He further said that Rankin and Schuh were both present, and that when the note was delivered to Schuh, Rankin said: "Well, I don't want to have that guarantee lying around here with my name on it, and since you are not going to do any further business with the Urmi Oil Company it is possible that someone might bring the note to the bank some day and my guarantee would be in existence on it, and I would like to have my guarantee taken off of there." To this the witness said: "It is going in our files merely as a part of our permanent file"—"and I took it off there" in Mr. Schuh's presence, and he, Schuh, "heard the conversation and he said nothing about the guarantee". The witness saw the Urmi note in October, 1929, for the first time, and the two red lines were then through Belyea's name.

On January 17, 1931, Schuh's attorneys wrote plaintiff bank, saying: "Mr. Schuh advises that at the time he made his $5000 note in your favor that the original note bearing signature of Urmi Oil Company and John E. Schuh and B. U. Belyea was delivered to him, but that the guarantee bearing signatures of J. N. McFate, Edgar E. Brown, J. B. Rankin and O. M. Paddleford was not delivered to him and must still be in your possession. If you are able to find this guarantee in your files will you forward it to Mr. Schuh or to this office for him, at your first convenience." Apparently the general guarantee was sent to the attorneys in response to this letter, although the evidence justified the conclusion that it was no part of the agreement to execute the note sued on. This letter also corroborates the statement of Dawson that the note was delivered to Schuh at the time he executed the instrument sued on, and disputes that of Schuh that he did not get it until some time later; and a fair conclusion would be that he knew then, if not before, that Belyea's name was scratched off, but made no complaint until after suit was brought against him. On cross-examination Dawson was asked if it was not a fact that the execution of the note sued on did not contemplate that both the guarantee and the Urmi note were to be assigned to Schuh, to which he replied: "Not at all. We

were not to give that to them at that time. The guarantee belonged to us; it was a continuing guarantee for our files."

Of course, it is of no importance that there may be testimony contradicting that which we have quoted. It is sufficient that there is substantial evidence in support of the lower court's findings.

The appeal from the order denying a new trial is dismissed. The judgment is affirmed.

Stephens, P. J., and Archbald, J., *pro tem.*, concurred.